# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | |
| **JOSEPH I. AGUIRRE,** | **Bankruptcy Case No. 11-41126-JDP** |
| Debtor. | |

_____

## MEMORANDUM OF DECISION
_____

**Appearance:**

David Brown, Rigby, Idaho, Attorney for Debtor.

Jim Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Chapter 7 Trustee, R. Sam Hopkins.

Kathleen McCallister, Boise, Idaho, Chapter 13 Trustee.

## Introduction

Chapter 13[1] trustee Kathleen McCallister ("Trustee") objects to the allowance of a purported § 507(a)(1)(A) priority claim for a domestic

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

support obligation ("DSO") in the bankruptcy case of debtor Joseph Aguirre ("Aguirre"). Aguirre and his former spouse, Emily Vaden ("Vaden"), self-crafted a divorce decree under the terms of which Aguirre agreed to pay Vaden $6,000 for her community property interest in his employer-sponsored 401(k) retirement account. R. Sam Hopkins ("Hopkins"), the chapter 7 trustee in Vaden's bankruptcy case, asserts a priority claim for the $6,000 obligation in Aguirre's case. Trustee argues the divorce decree does not create a DSO as defined by the Code, and, even if it did, Hopkins is not authorized by § 507(a)(1)(A) to assert a priority DSO claim. A hearing on Trustee's objection to Hopkins' claim was held February 7, 2012, after which the Court took the issues under advisement. Having considered the evidence, testimony, the parties' submissions, and applicable law, this Memorandum sets forth the Court's findings of fact and conclusions of law. Rule 7052, 9014.

///

# Facts[2]

Aguirre and Vaden divorced in September of 2008. They drafted their own divorce decree that, among other things, directed the distribution of their community and separate property, and divided responsibility for their debts. When they divorced, both Aguirre and Vaden were employed, though Aguirre's hourly wage was approximately two-and-one-half times that of Vaden.[3] Aguirre and Vaden had no children.

Under the decree, each spouse retained their interest in any separate property.[4] The decree directed that the couple's community property

---

[2] Unless otherwise noted, these undisputed facts are derived from the testimony at the hearing and the parties' briefs.

[3] While Vaden earned approximately $8 to $9 an hour, Aguirre earned $21 to $22 an hour.

[4] The couple's property was undoubtedly classified as "separate" or "community" based on their understanding of community property principles. Whether that understanding comports with the law is, at times, questionable. For example, the couple's divorce decree designated a 2006 Subaru Impreza as Vaden's separate property, yet obligated Aguirre to make payments on the Subaru, and indicated that, once the car was paid for, Aguirre was to transfer title to Vaden. This is certainly not the treatment one would normally expect for
(continued...)

MEMORANDUM OF DECISION - 3

home would be sold, with the sale proceeds to be divided 50/50. All remaining items of community property were distributed to Vaden, including all furniture, decorations, and household goods. Aside from a "separate property" entertainment system, two pet dogs, his 401(k) account, and his interest in the community property home, the divorce decree did not distribute anything to Aguirre. Rather, it obligated him to pay certain, specified "debts," including some that may have been community debts.[5] Among the "debts" was the provision of significance in this case, which stated:

> Husband will pay spouse in cash her entitled
> community share of husbands 401K, the amount
> will be paid monthly of at least $200.00 a month
> or can be paid in lump sums until the amount of
> $6000.00 is paid with no accruing interest, with
> this agreement spouse forfeits all rights to
> husbands 401K[.] (sic)

Ex. 200. At the time, Aguirre believed he was legally required to give

---

[4](...continued)
an item of Vaden's "separate property."

[5] Two of the identified debts are for credit cards.

MEMORANDUM OF DECISION - 4

Vaden "her share" of his 401(k) account proceeds,[6] but did not believe Vaden needed "domestic support." He did not consider the 401(k) payment to be such support, because of the nature and extent of property Vaden received through the divorce decree, and because she did not have significant financial obligations after the divorce.

The state court entered the couple's proposed divorce decree on September 19, 2008.

Vaden filed a chapter 7 bankruptcy petition with her joint-debtor-husband on September 18, 2009. Bankr. No. 09-41453, Dkt. No. 1.[7] Hopkins was appointed as to serve as chapter 7 case trustee. In her schedules, Vaden indicated she was not entitled to "[a]limony, maintenance, support, [or] property settlements." *Id.* at Schedule B.

---

[6] Rather than deal with the hassle of completing the paperwork to receive a payout from the 401(k) fund itself, Aguirre and Vaden determined he would make payment to her from other funds.

[7] The Court may take judicial notice of its own records in other cases, consistent with FED. R. EVID. 201. *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 146 (9th Cir. BAP 1988).

MEMORANDUM OF DECISION - 5

When Hopkins reviewed the couple's divorce decree, however, and learned of the $6,000 owed Vaden, he initiated an adversary proceeding against Aguirre to collect the $6,000 obligation as an account receivable. Adv. No. 11-8003, Dkt. No. 1. Aguirre disputed the $6,000 was "an account receivable or a domestic support obligation as defined in the bankruptcy code." *Id.* at Dkt. No. 7. He also alleged he had made a "number of payments" toward the $6,000 obligation, but could not identify how many. *Id.* Prior to trial, Hopkins and Aguirre stipulated to dismiss the adversary proceeding without prejudice due to a belief "the matter may be resolved through [Aguirre's] filing of a Chapter 13 bankruptcy." *Id.* at Dkt. No. 10.

Aguirre filed that bankruptcy case on July 7, 2011. Bankr. No. 11-41126, Dkt. No. 1. In his schedules, Aguirre anticipated a priority claim for a DSO "owed to or recoverable by a spouse, former spouse, or child." *Id.* at Schedule E. In describing that anticipated claim, Aguirre indicated it was for a "401k (sic) Payment Awarded in [his] Divorce Decree," in the

MEMORANDUM OF DECISION - 6

amount of $6,500.[8] *Id.* at 17.

In his initial chapter 13 plan, Aguirre proposed an increase in plan payments to Trustee as soon as he paid off a "401k loan," and indicated he did not owe any DSOs. Dkt. No. 13. Hopkins subsequently moved to dismiss Aguirre's case pursuant to § 1307(c)(11)[9] because Aguirre had not included the 401(k) obligation in his chapter 13 plan as a DSO owing to Hopkins on behalf of Vaden's bankruptcy estate. Dkt. No. 30. Aguirre objected to the dismissal because he did "not believe said claim is a [DSO]." Dkt. No. 31. At the hearing on the motion to dismiss, Hopkins withdrew his motion on the condition that Aguirre would file a second amended chapter 13 plan. Dkt. No. 33.

---

[8] It is unclear why Aguirre's schedules indicate the amount of the 401(k) payment owed to Vaden was in the amount of $6,500, particularly since, in the earlier adversary proceeding, he alleged to have made payments against the $6,000 amount specified in the divorce decree.

[9] Section 1307(c)(11) provides the Court may convert or dismiss a debtor's chapter 13 case for cause, including for "failure of the debtor to pay any domestic support obligation *that first becomes payable after the date of the filing of the petition*." (emphasis added). If the 401(k) obligation were a DSO, it first became payable before Aguirre filed his petition, and, it appears, § 1307(c)(11) would not provide sufficient cause for converting or dismissing Aguirre's case.

MEMORANDUM OF DECISION - 7

Aguirre filed a second amended plan soon thereafter. Dkt. No. 34. In it, Aguirre indicated he owed a DSO under § 507(a)(1)(A). *Id.* Because Hopkins had not done so, Aguirre's attorney filed a $6,000 priority claim in Aguirre's bankruptcy case on behalf of Hopkins,[10] indicating the basis for the claim was a "divorce decree," and asserting the full $6,000 was entitled to priority under § 507(a)(1)(A) as a DSO. Claim No. 9-1.

Trustee objected to Hopkins' proof of claim, arguing it was not entitled to priority under § 507, but should instead be allowed as an unsecured claim. Dkt. No. 37. Hopkins disputes Trustee's position, and maintains Aguirre's obligation to Vaden is in the nature of a DSO for the Code's purposes. The Court agrees with Trustee.

///

///

---

[10] *See* Rule 3004 (providing that if a creditor does not timely file a proof of claim, a debtor or the trustee may do so on the creditor's behalf.) Aguirre's attorney signed and submitted the proof of claim which designates Hopkins as the creditor and Hopkins' attorney as the individual to whom notices should be sent. Because Hopkins is the designated creditor, and because he now asserts the proof of claim as his own, the Court hereafter refers to the proof of claim as that of Hopkins.

MEMORANDUM OF DECISION - 8

## Discussion

**I.   The 401(k) obligation is not a domestic support obligation.**

Section 507(a), the priority scheme for certain unsecured claims and administrative expenses, gives first priority to:

> Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative . . . .

§ 507(a)(1)(A).  According to the Code,[11] to be a "domestic support

---

[11] Section 101(14A) provides:

The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
(A)  owed to or recoverable by—
   (I)  a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
   (ii)  a governmental unit;
(B)  in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is

(continued...)

MEMORANDUM OF DECISION - 9

obligation," an obligation must be "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." § 101(14A)(B). Whether any particular financial obligation qualifies as "support," is determined by resort to federal law, and interpretations of "domestic support obligation" under former § 523(a)(5)[12]

---

[11](...continued)
expressly so designated;
(C)  established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
  (I)  a separation agreement, divorce decree, or property settlement agreement;
  (ii)  an order of a court of record; or
  (iii)  a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D)  not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

[12] Before the Code's 2005 amendments, § 523(a)(5), which today simply excepts a "domestic support obligation" from discharge, excepted from discharge any debt

  to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a

(continued...)

MEMORANDUM OF DECISION - 10

are instructive. *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1405 (9th Cir. 1996), *rev'd on other grounds*, *Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir. 1997)); *In re Nelson*, 451 B.R. 918, 921 (Bankr. D. Or. 2011) (citing *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1142 (9th Cir. 1998).

Ultimately, the Court must determine the parties' intent in establishing a financial obligation; whether it was intended as "support," or something else. *In re Sternberg*, 85 F.3d at 1405; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984); *Phegley v. Phegley (In re Phegley)*, 443 B.R. 154, 157 (8th Cir. BAP 2011). To do so, the Court may use a range of factors. *Smith v. Pritchett (In re Smith)*, 398 B.R. 715, 721 (1st Cir. BAP 2008). While determining an obligation's nature and function requires a "totality of the circumstances" approach, relevant factors may include a divorce decree's language, the parties' financial circumstances when the obligation was established, whether one party or another receives the marital property, the periodic nature of payments under the obligation, whether the

---

[12](...continued)
court of record . . . .

MEMORANDUM OF DECISION - 11

obligation terminates upon the death or remarriage of the recipient, and the difficulty of the recipient to subsist without the payments. *In re Sternberg*, 85 F.3d at 1405; *In re Phegley*, 443 B.R. at 158; *In re Smith*, 398 B.R. at 721.

Here, Aguirre's and Vaden's divorce decree does not elucidate the couple's intent as to the 401(k) obligation; it categorizes the obligation as neither support nor a property settlement.[13]  Instead, the obligation was designated merely as a "debt."

When the decree was drafted, both Aguirre and Vaden were employed.  While there was some disparity in the couple's earning power, Vaden's hourly wage of $8 to $9 per hour was not unreasonable for a single individual with no dependents.  While an additional $200 per month would conceivably cushion Vaden's monthly budget, Aguirre's 401(k) obligation terminated upon payment of $6,000, and there is no indication the couple intended the payments to supplement Vaden's income.

---

[13]  Vaden's 2009 bankruptcy schedules, however, are somewhat insightful inasmuch as they indicate Vaden did not consider the 401(k) obligation to be in the nature of alimony, maintenance, or support.

MEMORANDUM OF DECISION - 12

Aside from the couple's home, the divorce decree distributed all community property to Vaden. That distribution clearly favored Vaden, and that factors against a finding that the 401(k) obligation was in the nature of additional support. Vaden did not have any dependents, and, with her employment and the receipt of the couple's community property, it is likely she did not need Aguirre's 401(k) payments for her support.

While Aguirre's 401(k) "debt" was structured to provide Vaden a monthly payment of at least $200, Aguirre also had the option of satisfying the 401(k) obligation all at once, through a lump sum payment. Were the 401(k) obligation intended as support, rather than something else, it likely would have required Aguirre to provide Vaden extended support. Instead, it gave him the option of terminating the obligation whenever his financial resources allowed him to do so.

Aguirre's obligation for the 401(k) payment did not terminate with Vaden's remarriage, and there is no indication the couple intended it to do so. Had the 401(k) obligation been in the nature of support, it likely would have terminated upon Vaden's remarriage, when she no longer needed

MEMORANDUM OF DECISION - 13

support from a former husband.

In looking at the totality of the circumstances, the Court finds Aguirre and Vaden intended the 401(k) payment obligation to be nothing more than a property equalization payment. Aguirre believed he was legally obligated to provide Vaden payment for her community property interest in his 401(k) account, and the payment described in their divorce decree appears to have been nothing more than a mechanism to fulfill that perceived obligation. Because the 401(k) obligation is not in the nature of support, and is not a DSO pursuant to the Code, Hopkins' claim is not entitled to § 507(a)(1)(A) priority as a DSO.[14]

---

[14] While the Court is not required to reach the issue here, there is also room to question whether Hopkins was authorized by § 507(a)(1)(A) to assert a priority DSO claim in Aguirre's bankruptcy case. Section 507(a)(1)(A)'s plain language specifies that only certain classes of individuals are authorized to assert such claims, and a former spouse's chapter 7 trustees is not included in that list. *See* § 507(a)(1)(A) (limiting the field of potential DSO priority claimants to "a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative"). Some courts, relying on a plain language approach to the Code, have determined that, because the Code limits those able to assert a DSO to specified classes, anyone not a member of those classes may not assert a debt as a DSO. *See, e.g., Tucker v. Oliver*, 423 B.R. 378, 379–82 (W.D. Okla. 2010); *Loe, Warren, Rosenfield, Katcher, Hiibs, & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 764–65 (Bankr. N.D. Tex. 2007). On the other hand, some
(continued...)

MEMORANDUM OF DECISION - 14

**Conclusion**

Aguirre's obligation to pay Vaden $6,000 for her community property interest in his 401(k) account was not in the nature of alimony, maintenance, or support. Rather, as a property equalization payment, that debt is not entitled to priority status in Aguirre's bankruptcy as a domestic support obligation.

Trustee's objection to Hopkins' § 507(a)(1)(A) priority claim is, therefore, sustained. The claim will be disallowed as a priority claim, and

---

[14](...continued)
courts have accorded DSO priority when the obligation at issue was in the nature of support even though asserted by a third party. *See, e.g.*, *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 750–51 (8th Cir. 1995); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1490 (10th Cir. 1995); *Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini)*, 365 B.R. 251, 256–57 (Bankr. S.D. Fla. 2007) (allowing a third party to assert a DSO only when the former spouse or child would remain liable for the obligation if the third party were not paid through the debtor's bankruptcy). According to these decisions, if the obligation owed to the third party was on account of domestic-support-related services rendered "on behalf of a child or former spouse,"relying on policy considerations, they view the obligation to be the equivalent of support and have allowed the third party to assert a DSO. *See Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140–42 (9th Cir. 1998) (finding fees owed to third parties who had provided or paid for services on behalf of a child were equivalent to support payments to the child). However, even in such cases, the most important consideration is the "nature of the debt," and whether the debt was for support-related services rendered on behalf of a DSO-specified individual. *See id.* at 1141.

MEMORANDUM OF DECISION - 15

instead allowed as an unsecured claim.

A separate order will be entered.

Dated: February 27, 2012

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 16